**Law Offices of Avrum J. Rosen, PLLC**
38 New Street
Huntington, New York 11743
(631) 423-8527
Avrum J. Rosen, Esq.
Alex E. Tsionis, Esq.

*Attorneys for David J. Doyaga, Sr., Plaintiff-Trustee*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 7 |
| RICHMOND HILL LAUNDRY, INC., | Case No.: 20-42918-ess |
| Debtor. | |

--------------------------------------------------------x

| | |
|---|---|
| DAVID J. DOYAGA, SR., Solely as | Adv. Pro. No.: 22- |
| as Chapter 7 Trustee of the Estate of | |
| RICHMOND HILL LAUNDRY, INC., | |
| Plaintiff, | |
| -against- | |
| ERIC NG, | |
| CHUN ZU WU and | |
| QUEENS LAUNDRY 88 INC. | |
| Defendant. | |

--------------------------------------------------------x

## <u>COMPLAINT</u>

David J. Doyaga, Sr., Solely as Chapter 7 Trustee (the "<u>Plaintiff</u>") of the Estate of

Richmond Hill Laundry, Inc. (the "<u>Debtor</u>"), by and through his counsel, the Law Offices of

Avrum J. Rosen, PLLC, respectfully submits this, as and for his complaint (the "<u>Complaint</u>")

against Eric Ng ("<u>Ng</u>"), Chun Zu Wu ("<u>Wu</u>") and Queens Laundry 88 Inc. ("<u>Queens Laundry</u>"),

and alleges as follows:

1

## NATURE OF THE ACTION

1.      This is an action by the Plaintiff – the Chapter 7 Trustee herein – to recover: (i) fraudulent and post-petition transfers from Queens Laundry; (ii) damages from Ng and Wu for their breaches of fiduciary duties owed to the Debtor; and (iii) for attorneys' fees and costs in bringing this action.

2.      By way of background, the Debtor conducted its commercial laundry business and operated out of the premises commonly known as 100-05 91st Avenue, Richmond Hill, New York 11418 (the "Premises"). At all times relevant in this litigation, the owner of the Premises, and the Debtor's landlord, was Zhang and Ng Inc. ("ZNI"). ZNI is owned by both Mr. Hong Zhang ("Zhang") and Ng. In addition, Zhang is the owner and principal of Queens Laundry, and is married to Wu. Ng and Wu are owners and principals of the Debtor.

3.      Queens Laundry, which is owned by Zhang, occupied space in the Debtor's Premises. In addition, Queens Laundry, which operated a similar business as the Debtor, also used the Debtor's equipment in the operation of its business. However, Queens Laundry was not paying the Debtor rent or use and occupancy for the use of the Debtor's Premises. To make matters worse, at the October 1, 2021 section 341(a) meeting of creditors, the Debtor's principal, Ng, testified that the money for Queen Laundry's use of the Debtor's equipment was not deposited into the Debtor's DIP account. And to the extent that Queens Laundry was paying rent to the Debtor (which the Trustee does not believe so) and was supposed to be deposited into the Debtor's accounts, Ng and Wu converted those monies.

4.      In addition, Ng and Wu, the principals of the Debtor, breached their fiduciary duties owed to the Debtor when they intentionally decided not to assume, or assume and assign, the Debtor's non-residential lease with ZNI, which was an asset of the Debtor, and which had thirteen

13 years remaining under the lease term. Rather, Ng and Wu purposely decided to allow the Debtor's lease to be rejected by operation of law because Zhang and Ng (the principals of ZNI – the Debtor's landlord and the owner of the Premises) entered into a contract to sell the Premises to a third-party, which was worth more vacant and so that Zhang and Ng would reap more gains from the sale to the detriment of the Debtor's creditors.

5.      The Plaintiff brings this action here because the Plaintiff is the Chapter 7 Trustee of the Debtor's estate.

**<u>JURISDICTION AND VENUE</u>**

6.      This adversary proceeding relates to the above-captioned bankruptcy proceeding pending in the United States Bankruptcy Court for the Eastern District of New York and is a "core proceeding" under 28 U.S.C. §§ 157(b)(2)(A), (B), (E), (F), (H), and (O) and 1334, and Rules 7001 and 7065 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").

7.      The United States Bankruptcy Court for the Eastern District of New York has jurisdiction over this proceeding under 28 U.S.C. §§ 157 and 1334.

8.      This Court is the proper venue for this adversary proceeding in accordance with 28 U.S.C. § 1409(a).

9.      The statutory predicates for the relief sought herein include sections 105, 323, 502, 544, 548, 549 and 550 of Title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Bankruptcy Rules 6009 and 7001, sections 273, 274, 275, 276 and 276-a of the DCL, New York common law and any common law, rule, regulation and/or any applicable law of any other jurisdiction in which assets that are property of the estate currently unknown to the Plaintiff are located.

10.     Pursuant to Bankruptcy Rule 7008, the Plaintiff consents to the entry of final orders and judgments by the Court presiding over this adversary proceeding if it is determined that the

Court, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

## THE PARTIES

11. The Plaintiff is the Chapter 7 Trustee herein. The Plaintiff has a mailing address of 26 Court Street, Suite 1601, Brooklyn, New York 11242. The Plaintiff is authorized to file this action under section 323 of the Bankruptcy Code and Bankruptcy Rule 6009.

12. Defendant Ng is an individual and, upon information and belief, has a mailing address of 70 Tanager Lane, Levittown, New York 11756. Ng is a shareholder and principal of the Debtor, and is an "insider" of the Debtor as that term is defined in the Bankruptcy Code.

13. Defendant Wu is an individual and, upon information and belief, has a mailing address of 1376 E 14th Street, Brooklyn, New York 11230. Wu is a shareholder and principal of the Debtor, and is an "insider" of the Debtor as that term is defined in the Bankruptcy Code. Wu is the wife of Zhang.

14. Upon information and belief, defendant Queens Laundry is an active domestic business corporation formed and existing under the laws of the State of New York. Public records reflect that the address for service of process for Queens Laundry is Queens Laundry 88 Inc., 100-19 91st Avenue, Richmond Hill, New York 11418. Upon information and belief, Queens Laundry's president and principal is Zhang. Zhang is the husband of Wu.

## ALLEGATIONS APPLICABLE TO ALL CLAIMS FOR RELIEF

### I.   Procedural Background

15. On August 10, 2020 (the "Petition Date"), the Debtor commenced a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

16.     On August 23, 2021 (the "<u>Conversion Date</u>"), the Court entered an Order converting the Debtor's Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code.

17.     David J. Doyaga, Sr. was appointed interim Chapter 7 Trustee of the Debtor's estate and, by operation of law, became the permanent Chapter 7 Trustee of the Debtor's estate.

**II.     <u>Insolvency of the Debtor and Predicate Creditor</u>**

18.     As of the Petition Date, the Debtor was "balance sheet insolvent," in that the sum of its debts was greater than all of its assets at a fair valuation.

19.     According to the Debtor's Summary of Assets and Liabilities for Non-Individuals, as amended [Bankr. Dkt. No. 32-1], as of the Petition Date, the Debtor had liabilities of $417,136.52 and assets of $150,359.48, for a net deficit of minus $266,777.04.

20.     Upon information and belief, at all times relevant to this litigation, the Debtor was insolvent as of the Petition Date and as of the dates of the Prepetition Transfers (defined below).

21.     Additionally, the Debtor was indebted to creditors as of the dates of the Prepetition Transfers.

22.     On August 25, 2021, the Department of the Treasury/Internal Revenue Service (the "<u>IRS</u>") filed an amended proof of claim docketed as Claim 1-6 on the Court's Claims Register (the "<u>Claim</u>").

23.     According to the Claim, the Debtor owed taxes to the IRS in the amount of $200.00 for the November 30, 2017 tax period. It appears from the Claim that this $200.00 debt remained unpaid through the Petition Date and through the date the Claim was filed (August 25, 2021).

24.     As such, as of the dates of the Prepetition Transfers, and at all times relevant to this litigation, the Debtor was indebted to creditors.

25.     In addition, according to the *Affidavit of Lim Trinh in Support of Motion for Summary Judgment* (the "Trinh Affidavit"), which is attached to Claim 7 on the Court's Claim Register, in early April 2018, Clean Tech Service Solutions, Inc. ("Clean Tech") entered into a "Customer Supply Agreement" with the Debtor, which provided for, among other things, the sale by Clean Tech, and the purchase by the Debtor, of Clean Tech's laundry products for a three-year period (the "Agreement").

26.     According to the Trinh Affidavit, shortly after March 27, 2019, the Debtor advised Clean Tech that the Debtor would not be purchasing any more products and was "cancelling" the Agreement. The Trinh Affidavit further states that at that time, the Debtor had not made any payment of the ten invoices due to Clean Tech, and that the Debtor's total balance of unpaid invoices was $83,782.58. The dates and amounts of the unpaid invoices are set forth in the Trinh Affidavit and are also below:

| Invoice Date | Invoice Amount | Late Charge |
|---|---|---|
| 10/27/2018 | $20,202.85 | $10,303.45 |
| 11/29/2018 | $18,526.17 | $8,892.56 |
| 12/29/2018 | $15,529.93 | $6,988.46 |
| 01/30/2019 | $11,199.97 | $4,703.98 |
| 03/01/2019 | $9,256.55 | $3,610.05 |
| 04/01/2019 | $9,067.11 | $3,264.15 |
| **Total** | **$83,782.58** | **$37,762.65** |

27.     On November 23, 2021, the Court entered a "So Ordered" Stipulation between the Plaintiff and Clean Tech whereby Clean Tech agreed to, among other things, the reclassification of its Proof of Claim (Claim Number 7) as a non-priority general unsecured claim [Bankr. Dkt.

80] as Clean Tech failed to properly perfect its security interest under the Uniform Commercial Code and, as such, always had an unsecured claim.

28.     Accordingly, at the time of the Prepetition Transfers, and at all times relevant to this litigation, the Debtor was indebted to creditors.

## III.    **The Debtor's Business**

29.     Prior to the Petition Date, and during the pendency of the Debtor's Chapter 11 case, the Debtor was in the commercial laundry industry providing commercial laundry cleaning services to its clients, which primarily consisted of restaurants and hotels.

30.     The Debtor occupied and operated out of the Premises.

31.     The Debtor's principals and shareholders are Ng and Wu.

32.     At all times relevant to this litigation, the Premises was owned by ZNI. The principals and shareholders of ZNI are Zhang and Ng.

## IV.    **The Debtor's Lease**

33.     Prior to the Petition Date, the Debtor entered into a non-residential lease dated October 1, 2013, between ZNI, as landlord, and the Debtor, as tenant, together with the Rider to Lease (collectively, the "Lease"), whereby ZNI agreed to lease the Premises to the Debtor.

34.     The Debtor disclosed its Lease on its Schedule "G". *See* Bankr. Dkt. No. 16.

35.     The Lease was an asset of the Debtor.

36.     The terms of the Lease provided that the Lease was set to expire on October 1, 2033.

37.     As of the Petition Date, the Debtor had approximately 13 (thirteen) years remaining on the Lease.

## V.     Ng's and Wu's Breach of Fiduciary Duty

38.     During the pendency of the Debtor's Chapter 11 case, ZNI (which is owned by Zhang and Ng) entered into a commercial contract of sale for the Premises with Neutral Holding LLC – a thirty-party purchaser.

39.     Upon information and belief, in order to maximize the sale value of the Premises, ZNI agreed to deliver the Premises vacant and free and clear of the Debtor's tenancy.

40.     To that end, the Debtor, through its principals Ng and Wu, intentionally decided not to move to assume, or assume and assign, the Lease under section 365 of the Bankruptcy Code. Accordingly, under section 365(d)(4)(A) of the Bankruptcy Code, the Lease was deemed rejected by operation of law.

41.     The conscious decision by Ng and Wu to not assume, or assume and assign, the Lease was a breach of their fiduciary duties to the Debtor because Ng and Wu put their own self-interests before that of the Debtor's. In addition, Ng's and Wu's decision to no assume, or assume and assign, the Lease caused the Debtor and its creditors damages because the Debtor lost one of its most valuable assets – the Lease.

## VI.    Queens Laundry

42.     In addition to the Debtor operating out of the Premises, Queens Laundry also operated out of the Premises as well.

43.     Upon information and belief, Queens Laundry operated out of the Premises since its inception in May of 2019.

44.     Upon information and belief, Queens Laundry is also in the commercial laundry industry providing the same or similar services as the Debtor.

45.     Upon information and belief, Queens Laundry did not have any equipment and used the Debtor's Equipment (defined below).

46.     Queens Laundry is owned by Zhang, who is also a principal of ZNI, and who is married to Wu, the other principal of the Debtor.

**VII.    <u>Queens Laundry's Failure to Pay Rent for the Debtor's Premises</u>**

**A.     <u>The Prepetition Premises Rent Transfers</u>**

47.     Queens Laundry was operating out of the same physical space as the Debtor from in or around May 2019 to in or around April 2021.

48.     Upon information and belief, Queens Laundry did not have a lease with ZNI or with the Debtor.

49.     Upon information and belief, for the period commencing May 2019, through and including the Petition Date (the "<u>Prepetition Period</u>"), Queens Laundry was using the Debtor's space without paying any rent or use and occupancy to the Debtor (the "<u>Prepetition Premises Rent Transfers</u>"). As such, Queens Laundry was the recipient of transfers from the Debtor of the right to use the Debtor's space for no consideration or reasonably equivalent value. The total amount of the Prepetition Premises Rent Transfers is to be determined at trial.

50.     The Prepetition Premises Rent Transfers were made within the six (6) year reach-back period.

51.     The Prepetition Premises Rent Transfers were made at a time when the Debtor was insolvent, or the Prepetition Premises Rent Transfers rendered the Debtor insolvent.

52.     The Debtor received no consideration or reasonably equivalent value for the Prepetition Premises Rent Transfers.

53.     At the time of the Prepetition Premises Rent Transfers, the Debtor was indebted to creditors and the Debtor was not paying its obligations as they became due and owning.

54.     As of the date of the Prepetition Premises Rent Transfers, there were actual existing unsecured creditors holding claims allowable under section 502(e) of the Bankruptcy Code who could have avoided the Prepetition Premises Rent Transfers under the DCL.

55.     The Prepetition Premises Rent Transfers were made by the Debtor, to Queens Laundry, with actual intent to hinder, delay, or defraud the Debtor's creditors.

**B.     The Post-Petition Premises Rent Transfers**

56.     In addition to the Prepetition Premises Rent Transfers, Queens Laundry was also using and operating out of the Debtor's Premises as of the Petition Date, through and including in or around April 2021 (the "Post-Petition Period").

57.     During the Post-Petition Period, Queens Laundry was not paying the Debtor rent or use and occupancy for the Debtor's Premises (the "Post-Petition Rent Premises Transfers"). In addition, Queens Laundry did not have authority to use the Debtor's Premises either under the Bankruptcy Code or from the Court. The total amount of the Post-Petition Rent Premises Transfers is to be determined at trial.

**VIII.   Queens Laundry's Failure to Pay for the Use of the Debtor's Equipment**

**A.     The Prepetition Equipment Rent Transfers**

58.     During the Prepetition Period, Queens Laundry was also using the Debtor's machinery, supplies and equipment, which primarily consisted of, but was not limited to, washers, dryers, boilers, presses, folders, laundry carts, storage tanks, compressors, irons, hot water heaters, detergents, fabric softener, forklift, box trucks and other equipment related to the Debtor's business

(the "Equipment") as well as the cost of operating the Equipment, which included, but was not limited to, electricity, water fuel and cleaning supplies.

59.     Upon information and belief, Queens Laundry was not paying the Debtor for its use of the Debtor's Equipment during the Prepetition Period. As such, Queens Laundry is the recipient of transfers from the Debtor of the right to use the Debtor's Equipment for no consideration or reasonably equivalent value (the "Prepetition Equipment Rent Transfers" and the Prepetition Premises Rent Transfers, collectively, the "Prepetition Transfers"). The total amount of the Prepetition Equipment Rent Transfers is to be determined at trial.

60.     The Prepetition Equipment Rent Transfers were made within the six (6) year reach-back period.

61.     The Prepetition Equipment Rent Transfers were made at a time when the Debtor was insolvent, or the Prepetition Equipment Rent Transfers rendered the Debtor insolvent.

62.     The Debtor received no consideration or reasonably equivalent value for the Prepetition Equipment Rent Transfers.

63.     At the time of the Prepetition Equipment Rent Transfers, the Debtor was indebted to creditors and the Debtor was not paying its obligations as they became due and owning.

64.     As of the date of the Prepetition Equipment Rent Transfers, there were actual existing unsecured creditors holding claims allowable under section 502(e) of the Bankruptcy Code who could have avoided the Prepetition Equipment Rent Transfers under the DCL.

65.     The Prepetition Equipment Rent Transfers were made by the Debtor, to Queens Laundry, with actual intent to hinder, delay, or defraud the Debtor's creditors.

### B.    The Post-Petition Equipment Rent Transfers

66.    In addition to the Prepetition Equipment Rent Transfers, Queens Laundry was also using the Debtor's Equipment throughout the Post-Petition Period.

67.    According to Ng's testimony at the October 1, 2021 section 341(a) meeting of creditors, Queens Laundry was using the Debtor's Equipment and (allegedly) paying the Debtor for the use of the Debtor's Equipment.

68.    At the October 1, 2021 section 341(a) meeting of creditors, Ng further testified, however, that the rent money for the use of the Debtor's Equipment **was not** deposited into the Debtor's DIP account.

69.    The Trustee's review of the Debtor's monthly operating reports corroborates Ng's testimony that as of the Petition Date, no rent money was deposited into the Debtor's DIP account.

70.    As such, during the Post-Petition Period, Queens Laundry was not paying the Debtor for the use of the Debtor's Equipment (the "Post-Petition Equipment Rent Transfers" and the Post-Petition Rent Premises Transfers, collectively, the "Post-Petition Transfers" and together with the Pre-Petition Transfers, the "Transfers"). In addition, Queens Laundry did not have authority to use the Debtor's Equipment either under the Bankruptcy Code or from the Court. The total amount of the Post-Petition Equipment Rent Transfers is to be determined at trial.

71.    In the alternative, to the extent any rent due to the Debtor was not deposited into the Debtor's accounts at any point, it was converted by Ng and Wu in an amount to be determined at trial.

## IX.    The Plaintiff is Entitled to Attorneys' Fees

72.    Section 276-a of the DCL allows a bankruptcy trustee to recover their attorneys' fees and costs in a fraudulent conveyance action where the transfers are made by the transferor to the transferee with the actual intent to hinder, delay or defraud either present or future creditors.

73.    The Plaintiff has alleged that the Prepetition Transfers described herein were made/caused by the Debtor, to Queens Laundry, with the actual intent to hinder, delay or defraud either present or future creditors of the Debtor. Thus, at the very least, Queens Laundry is liable for the Plaintiff's attorneys' fees and costs incurred in bringing this action.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF AGAINST DEFENDANT QUEENS LAUNDRY
## (Fraudulent Transfer under 11 U.S.C. § 544)

74.    The Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "73" as if set forth fully herein.

75.    The Prepetition Transfers were made within six (6) years of the Petition Date.

76.    The Debtor received no consideration or reasonably equivalent value in exchange for the Prepetition Transfers.

77.    Upon information and belief, the Debtor: (a) was insolvent on the date of the Prepetition Transfers or became insolvent as a result of the Prepetition Transfers; (b) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with it was an unreasonably small capital; or (c) intended to incur or believed that it would incur debts beyond its ability to pay as they matured.

78.    At the time of the Prepetition Transfers, the Debtor was insolvent, or had incurred, or was intending to incur, debts beyond its ability to pay them as they became due.

79. At the time of the Prepetition Transfers, the Debtor knew, or should have known, its creditors held claims against it.

80. The Prepetition Transfers constitute fraudulent transfers under section 544 of the Bankruptcy Code.

81. By reason of the foregoing, the Plaintiff is entitled to an order avoiding the Prepetition Transfers pursuant to sections 544 and 550 of the Bankruptcy Code and a judgment against Queens Laundry in an amount to be determined at trial, plus interest and attorneys' fees and costs.

**SECOND CLAIM FOR RELIEF AGAINST DEFENDANT QUEENS LAUNDRY**
**(Fraudulent Transfer under 11 U.S.C. § 548(a)(1)(B))**

82. The Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "81" as if set forth fully herein.

83. The Prepetition Transfers were made within six (6) years of the Petition Date.

84. The Debtor received no consideration or reasonably equivalent value in exchange for the Prepetition Transfers.

85. Upon information and belief, the Debtor: (a) was insolvent on the date of the Prepetition Transfers or became insolvent as a result of the Prepetition Transfers; (b) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with it was an unreasonably small capital; or (c) intended to incur or believed that it would incur debts beyond its ability to pay as they matured.

86. At the time of the Prepetition Transfers, the Debtor was insolvent, or had incurred, or was intending to incur, debts beyond its ability to pay them as they became due.

87. At the time of the Prepetition Transfers, the Debtor knew, or should have known, its creditors held claims against it.

88. The Prepetition Transfers constitute fraudulent transfers under section 548(a)(1)(B) of the Bankruptcy Code.

89. By reason of the foregoing, the Plaintiff is entitled to an order avoiding the Prepetition Transfers pursuant to sections 548(a)(1)(B) and 550 of the Bankruptcy Code and a judgment against Queens Laundry in an amount to be determined at trial, plus interest and attorneys' fees and costs.

## THIRD CLAIM FOR RELIEF AGAINST DEFENDANT QUEENS LAUNDRY
### (Fraudulent Transfer under 11 U.S.C. § 548(a)(1)(A))

90. The Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "89" as if set forth fully herein.

91. The Prepetition Transfers were made within six (6) years of the Petition Date.

92. At the time of the Prepetition Transfers, the Debtor knew, or should have known, that its creditors held claims against it.

93. Upon information and belief, the Prepetition Transfers were made by the Debtor with the intent to hinder, delay, or defraud its creditors.

94. The Prepetition Transfers constitute fraudulent transfers under section 548(a)(1)(A) of the Bankruptcy Code.

95. By reason of the foregoing, the Plaintiff is entitled to an order avoiding the Prepetition Transfers pursuant to sections 548(a)(1)(A) and 550 of the Bankruptcy Code and a judgment against Queens Laundry in an amount to be determined at trial, plus interest and attorneys' fees and costs.

## FOURTH CLAIM FOR RELIEF AGAINST DEFENDANT QUEENS LAUNDRY
### (Fraudulent Transfer under § 273 of the DCL)

96.     The Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "95" as if set forth fully herein.

97.     The Prepetition Transfers were made within six (6) years of the Petition Date.

98.     At the time of the Prepetition Transfers, the Debtor was insolvent or was thereafter rendered insolvent.

99.     Upon information and belief, the Debtor did not receive fair consideration or reasonably equivalent value in exchange for the Prepetition Transfers.

100.    The Prepetition Transfers constitute fraudulent transfers in violation of section 273 of the DCL.

101.    Under sections 544(b) and 550 of the Bankruptcy Code, and section 273 of the DCL, the Plaintiff may avoid the Prepetition Transfers.

102.    By reason of the foregoing, the Plaintiff is entitled to an order avoiding the Prepetition Transfers pursuant to section 273 of the DCL and judgment against Queens Laundry in an amount to be determined at trial, plus interest and attorneys' fees and costs.

## FIFTH CLAIM FOR RELIEF AGAINST DEFENDANT QUEENS LAUNDRY
### (Fraudulent Transfer under § 274 of the DCL)

103.    The Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "102" as if set forth fully herein.

104.    The Prepetition Transfers were made within six (6) years of the Petition Date.

105.    At the time of the Prepetition Transfers, the Debtor was engaged in or was about to engage in a business or transaction for which the property remaining in its hands after the Prepetition Transfers was an unreasonably small capital.

106.     Upon information and belief, the Debtor did not receive fair consideration or reasonably equivalent value in exchange for the Prepetition Transfers.

107.     The Prepetition Transfers constitute fraudulent transfers in violation of section 274 of the DCL.

108.     Under sections 544(b) and 550 of the Bankruptcy Code, and section 274 of the DCL, the Plaintiff may avoid the Prepetition Transfers.

109.     By reason of the foregoing, the Plaintiff is entitled to an order avoiding the Prepetition Transfers pursuant to section 274 of the DCL and judgment against Queens Laundry in an amount to be determined at trial, plus interest and attorneys' fees and costs.

### SIXTH CLAIM FOR RELIEF AGAINST DEFENDANT QUEENS LAUNDRY
### (Fraudulent Transfer under § 275 of the DCL)

110.     The Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "109" as if set forth fully herein.

111.     The Prepetition Transfers were made within six (6) years of the Petition Date.

112.     At the time of the Prepetition Transfers, the Debtor intended or believed that it would incur debts beyond its ability to pay as they matured.

113.     Upon information and belief, the Debtor did not receive fair consideration or reasonably equivalent value in exchange for the Prepetition Transfers.

114.     The Prepetition Transfers constitute fraudulent transfers in violation of section 275 of the DCL.

115.     Under sections 544(b) and 550 of the Bankruptcy Code, and section 275 of the DCL, the Plaintiff may avoid the Prepetition Transfers.

116. By reason of the foregoing, the Plaintiff is entitled to an order avoiding the Prepetition Transfers pursuant to section 275 of the DCL and judgment against Queens Laundry in an amount to be determined at trial, plus interest and attorneys' fees and costs.

## SEVENTH CLAIM FOR RELIEF AGAINST DEFENDANT QUEENS LAUNDRY
### (Fraudulent Transfer under § 276 of the DCL)

117. The Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "116" as if set forth fully herein.

118. Upon information and belief, the Prepetition Transfers were made by the Debtor with the actual intent to hinder, delay, or defraud present or future creditors of the Debtor in violation of section 276 of the DCL.

119. Under sections 544(b) and 550 of the Bankruptcy Code, and section 276 of the DCL, the Plaintiff may avoid the Prepetition Transfers.

120. By reason of the foregoing, the Plaintiff is entitled to an order avoiding the Prepetition Transfers pursuant to section 276 of the DCL and judgment against Queens Laundry in an amount to be determined at trial, plus interest and attorneys' fees and costs.

## EIGHTH CLAIM FOR RELIEF AGAINST DEFENDANT QUEENS LAUNDRY
### (Fraudulent Transfer under § 276-a of the DCL)

121. The Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "120" as if set forth fully herein.

122. The Prepetition Transfers were made by the Debtor and received by the Defendant with the actual intent to hinder, delay, or defraud present or future creditors of the Debtor.

123. The Prepetition Transfers were received by the Defendant with the actual intent to hinder, delay, or defraud present or future creditors of the Debtor.

124.     The Prepetition Transfers constitute fraudulent transfers of the Debtor's assets in violation of section 276-a of the DCL.

125.     By reason of the foregoing, the Plaintiff is entitled to a judgment against Queens Laundry, under section 276-a of the DCL, for reasonable attorneys' fees in an amount to be determined by the Court in connection with the prosecution of this action.

## NINTH CLAIM FOR RELIEF AGAINST DEFENDANT QUEENS LAUNDRY
### (Unauthorized Post-Petition Transfers Under § 549)

126.     The Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "125" as if set forth fully herein.

127.     During the Post-Petition Period, Queens Laundry was not paying the Debtor rent or use and occupancy for the Debtor's Premises – the Post-Petition Rent Premises Transfers herein.

128.     During the Post-Petition Period, Queens Laundry was not paying the Debtor for the use of the Debtor's Equipment – the Post-Petition Equipment Rent Transfers herein.

129.     The Post-Petition Transfers were not authorized under any section of the Bankruptcy Code or by the Court.

130.     By reason of the foregoing, the Plaintiff is entitled to an order avoiding the Post-Petition Transfers pursuant to sections 549 and 550 of the Bankruptcy Code and a judgment against Queens Laundry in an amount to be determined at trial, plus interest and attorneys' fees and costs.

## TENTH CLAIM FOR RELIEF AGAINST DEFENDANT QUEENS LAUNDRY
### (Recovery of Avoided Transfers under § 11 U.S.C. § 550)

131.     The Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "130" as if set forth fully herein.

132.     Section 550(a) of the Bankruptcy Code provides in relevant part:

> [T]o the extent that a transfer is avoided under section 544, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the

> estate, the property transferred, or, if the court so orders, the value of such property, from . . . the initial transferee of such transfer or the entity for whose benefit such transfer was made; or . . . any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a).

133.     Under section 550(a) of the Bankruptcy Code, the Plaintiff may recover the Transfers or the value thereof.

134.     By reason of the foregoing, the Plaintiff is entitled to an order recovering the Transfers, or the value thereof, pursuant to section 550 of the Bankruptcy Code and a judgment against Queens Laundry in an amount to be determined at trial, plus interest and attorneys' fees and costs.

## ELEVENTH CLAIM FOR RELIEF AGAINST DEFENDANT QUEENS LAUNDRY
### (Unjust Enrichment Under New York Law)

135.     The Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "134" as if set forth fully herein.

136.     Queens Laundry was enriched as a result of the Transfers.

137.     The enrichment of Queens Laundry was at the expense of the Debtor.

138.     The circumstances relating to the Transfers are such that equity and good conscience require Queens Laundry to compensate the Debtor's estate.

139.     By reason of the foregoing, the Plaintiff is entitled to an order and judgment against Queens Laundry in an amount to be determined at trial, plus interest and attorneys' fees and costs.

## TWELFTH CLAIM FOR RELIEF AGAINST DEFENDANTS NG AND WU
### (Conversion)

140.     The Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "139" as if set forth fully herein.

141. In the alternative, to the extent that rent and/or use and occupancy and/or payment due to the Debtor for the Premises and/or the Debtor's Equipment was not deposited into the Debtor's bank account(s), it was converted by Ng and Wu.

142. The Debtor had a possessory right and interest in any and all monies that were due to the Debtor for the rent/use and occupancy of the Premises and/or the use of the Debtor's Equipment.

143. Ng and Wu exercised dominion and control over the monies due to the Debtor for the rent/use and occupancy of the Premises and/or the use of the Debtor's Equipment and interfered with the Debtor's rights when Ng and Wu converted the monies.

144. At all relevant times to this litigation, Ng and Wu owed the Debtor a duty to not convert the monies due to the Debtor for the rent/use and occupancy of the Premises and/or the use of the Debtor's Equipment.

145. By reason of the foregoing, the Plaintiff is entitled to an order and judgment against Ng and Wu in an amount to be determined at trial, plus interest and attorneys' fees and costs.

## THIRTEENTH CLAIM FOR RELIEF AGAINST DEFENDANTS NG AND WU
### (Unjust Enrichment Under New York Law)

146. The Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "145" as if set forth fully herein.

147. In the alternative, Ng and Wu were enriched as a result of converting the monies due to the Debtor for the rent/use and occupancy of the Premises and/or the use of the Debtor's Equipment.

148. The enrichment of Ng and Wu was at the expense of the Debtor.

149. The circumstances relating to the converted monies are such that equity and good conscience require Ng and Wu to compensate the Debtor's estate.

150.     By reason of the foregoing, the Plaintiff is entitled to an order and judgment against Ng and Wu in an amount to be determined at trial, plus interest and attorneys' fees and costs.

## FOURTEENTH CLAIM FOR RELIEF AGAINST DEFENDANTS NG AND WU
### (Breach of Fiduciary Duty)

151.     The Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "150" as if set forth fully herein.

152.     Ng and Wu are shareholders and principals of the Debtor.

153.     Shareholders of a closely held corporation owe fiduciary duties to such corporation, and will be held liable in damages for violations thereof.

154.     As the owners and principals of the Debtor, Ng and Wu owed fiduciary duties to the Debtor.

155.     As set forth in this Complaint, Ng and Wu have committed intentional acts of neglect, misconduct, gross mismanagement, corporate waste, self-dealing and disloyalty, without excuse by failing to assume the Lease, which is an asset of the estate, failing to collect rent or use and occupancy for the Premises, and failing to collect rent for the use of the Debtor's Equipment.

156.     In relation to the acts and omissions described herein, Ng and Wu acted to benefit themselves and with the intention and knowledge that their acts would cause specific injury directed against the Debtor, which injury would not be shared by Ng and Wu.

157.     Ng's and Wu's conduct and breaches described above are expressly prohibited and actionable as provided by the Debtor's shareholder/operating agreement.

158.     Ng's and Wu's misconduct, as discussed in this Complaint, is the proximate cause of the injuries suffered by the Debtor.

159.     The Debtor has suffered actual injury as a direct, foreseeable, and proximate result of Ng's and Wu's breaches of fiduciary duties.

160.    By reason of the foregoing, the Plaintiff is entitled to recover compensatory damages for Ng's and Wu's breaches of their fiduciary duties to the Debtor, in an amount to be determined at trial.

161.    Additionally, because Ng's and Wu's conduct was willful and wanton and involved a high degree of moral culpability, Ng and Wu should be ordered to pay to the Plaintiff punitive or exemplary damages, in an amount to be determined at trial.

## <u>RESERVATION OF RIGHTS</u>

162.    During the course of this adversary proceeding, the Plaintiff may learn (through discovery or otherwise) of additional causes of action. Accordingly, the Plaintiff reserves his right to amend this Complaint to include: (i) further information regarding the allegations herein; (ii) revisions to the Defendant's name; (iii) additional defendants; (iv) additional causes of action; and/or (v) to seek recovery of such additional transfers (the "<u>Amendments</u>"), that may become known to the Plaintiff at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to the Complaint.

**WHEREFORE**, the Plaintiff respectfully demands: (i) judgment against the Defendants consistent with the allegations set forth in the Complaint; together with (ii) such other, further and different relief that this Honorable Court deems just, proper and equitable under the facts and circumstances herein.

Dated: February 2, 2022
       Huntington, New York

Respectfully submitted,

**Law Offices of Avrum J. Rosen, PLLC**

By:    */s/ Avrum J. Rosen*
      Avrum J. Rosen, Esq.
      Alex E. Tsionis, Esq.
      38 New Street
      Huntington, New York 11743
      (631) 423-8527

arosen@ajrlawny.com
atsionis@ajrlawny.com

*Counsel to David J. Doyaga, Sr.*
*Solely as Chapter 7 Trustee of the*
*Estate of Richmond Hill Laundry, Inc.*